FILED

2019 APR 23 PM 3: 03

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 2019- 4312                                    SECTION "C

SECTION 10

WORLD WAR II THEATRE, INC.

VERSUS

DESIMONE CONSULTING ENGINEERING GROUP,LLC; WILLIAM R. O'DONNELL, P.E.; EVANSTON INSURANCE COMPANY; MARKEL SPECIALTY INSURANCE COMPANY; AND MARKEL INSURANCE COMPANY

FILED:_____

_____
DEPUTY CLERK

### PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes World War II Theatre, Inc., and alleges as follows:

1.

Plaintiff, World War II Theatre, Inc. ("WWIITI"), is a Louisiana non-profit corporation that operates as a tax exempt supporting organization to The National World War II Museum, Inc. The National World War II Museum is a museum located in New Orleans, Louisiana that is dedicated to preserving and presenting the story of the American experience in World War II. The Museum is a world-renowned destination for tourists and scholars.

2.

Made defendants herein are:

a)   DeSimone Consulting Engineering Group, LLC ("DeSimone"), a foreign limited liability company authorized to do and doing business in Louisiana;

b)   William R. O'Donnell, P.E., a professional engineer licensed in the State of Louisiana;

c)   Evanston Insurance Company ("Evanston"), a foreign insurance company made a defendant pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. § 22:1269; and

d)   Markel Specialty Insurance Company and/or Markel Insurance Company (collectively "Markel"), foreign insurance companies made defendants pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. § 22:1269.

3.

Venue is proper in this Parish pursuant to Louisiana Code of Civil Procedure articles 74 and 76.

4.

This Court has jurisdiction over this action pursuant to Louisiana Code of Civil Procedure article 2, Louisiana Civil Code article 2315, and Louisiana Revised Statute section 22:1269.

5.

Defendants are subject to the personal jurisdiction of this Court pursuant to Louisiana Code of Civil Procedure article 6 and Louisiana Revised Statute section 13:3201(A)(1)–(3).

6.

WWIITI is constructing the "Higgins Hotel & Conference Center" on property adjacent to The National World War II Museum.  The design and construction of the Higgins Hotel & Conference Center is hereafter referred to as the "Hotel Project."

7.

On or about March 6, 2017, WWIITI retained Nichols Brosch Wurst Wolfe and Associates, Inc. ("Nichols") to serve as the architect for the Hotel Project.

8.

DeSimone is an engineering company that provides, *inter alia,* structural engineering services for architects, owners, and developers.  DeSimone agreed to serve as the structural engineer for the Hotel Project pursuant to a contract executed by Nichols and DeSimone. DeSimone expressly agreed, in Section 10.4 of its contract with Nichols, that WWIITI "may make a direct claim for legal or equitable relief against [DeSimone] for acts, errors and/or omissions" by DeSimone.

9.

William R. O'Donnell, P.E. ("O'Donnell") is a partner of DeSimone and serves as the managing principal of DeSimone's Miami Office.  The contract between Nichols and DeSimone identifies O'Donnell as DeSimone's "designated representative" for purposes of the Hotel Project. On information and belief, O'Donnell either prepared the structural design drawings for the Hotel Project and/or they were prepared under his supervision.

10.

WWIITI hired Palmisano Contractors LLC ("Palmisano") to serve as the General Contractor for the Hotel Project pursuant to a separate contract between WWIITI and Palmisano.

11.

On April 26, 2018, Palmisano advised WWIITI that DeSimone had made multiple revisions to previously issued design drawings.  DeSimone's revisions caused, *inter alia,* a significant amount of rework, changes to beams that had already been detailed, fabricated, and installed in the field, increased costs, and schedule impact.

12.

On or after April 26, 2018, Palmisano advised WWIITI that steel beams, which Palmisano had previously installed on the second and third floors on the east side of the building, appeared to be deflecting after the installation of the steel deck.  DeSimone subsequently confirmed that the beams, which it had designed, were under-sized and insufficient to handle the building loads and that remediation would be required.  As a result of this egregious error by DeSimone, Palmisano had to detail and fabricate the steel repairs, reinforce five beams on the second floor, remove six existing steel beams on the third floor and install larger steel beams in their place.  The foregoing repairs required Palmisano to block out the repair areas in order to pour the surrounding concrete decks, which impacted the Hotel Project schedule.

13.

In early August 2018, Palmisano advised WWIITI that another structural steel beam, which had been previously installed on the third floor on column line 1 on the east side of the building, appeared to be too small and inadequate to support the concrete block wall load from the third floor up to the ninth floor roof.  DeSimone subsequently acknowledged that remediation would be required and that DeSimone's structural drawings required revisions due to design errors.

14.

On August 14, 2018, DeSimone instructed Palmisano by telephone to stop work in the area of the foregoing concrete block wall pending DeSimone's preparation of details for the structural repair.  From August 14, 2018 through August 23, 2018, Palmisano repeatedly asked DeSimone if the building was safe and whether structural shoring was required.

15.

Concerned by the number and severity of the foregoing errors, WWIITI, on August 15, 2018, requested a third party peer review of the entire structural design.

16.

On August 27, 2018, DeSimone instructed Palmisano to stop any further concrete block work on the entire length of the building.  On that same day, WWIITI requested that Nichols provide a written stop work order for work on column line 1, repair details, and a response to WWIITI's August 15th request for a third party structural peer review of the structural design.

17.

On August 28, 2018, Nichols provided a letter from DeSimone stating that it had directed Palmisano to cease work in all areas on column line 1 impacted by the foregoing superstructure design deficiencies.  Despite all of the foregoing, DeSimone took no action to review the entirety of its structural design, including the foundation.

18.

On Thursday, August 30, 2018, Nichols notified WWIITI that DeSimone had discovered more than 27 additional locations with undersized beams.  Greatly alarmed, WWIITI then implored DeSimone to aggressively provide a revised design to ensure the safety of the superstructure.  In response, DeSimone informed WWIITI that shoring in specific locations was required, that the building could be only partially occupied and was subject to load limitations, and that construction on the level 8 masonry wall and the west level 7 masonry wall could not proceed until the repair designs and related-repairs were completed.  The foregoing delay to the construction of masonry walls prevented Palmisano from completing the roof and making the building water tight as planned, causing a direct impact to the critical path of the construction schedule.  Despite the severity of the errors and DeSimone's recognition of their impact on the schedule, DeSimone refused to commence work on designing the repairs during the weekend following notice of the 27-plus undersized beams.

19.

More than two months after WWIITI's request, on October 17, 2018, Ysrael A. Seinuk, P.C. Consulting Engineers issued a structural peer review report that confirmed the existence of the more than 27 additional superstructure design deficiencies caused by DeSimone's errors

and/or omissions, including more than twenty (20) additional undersized beams. The Seinuk report also identified additional concerns that DeSimone had failed to identify.

20.

Nichols subsequently informed WWIITI that the Seinuk peer review did not include a review of the hotel foundation and that DeSimone was not planning to request a peer review of the foundation. As a result, foundation-related problems were not timely identified and DeSimone further delayed the Hotel Project by failing to timely review and identify foundation-related deficiencies.

21.

On October 12, 2018, Nichols advised WWIITI of the necessity of bolstering the foundation with two additional massive pile caps beneath the hotel along column 1. Each pile cap was comprised of sectional steel pipes driven to a depth of approximately 100 feet. The delay in discovering and addressing the foundation deficiency and designing new pile caps further delayed the Hotel Project and caused WWIITI to incur significant unnecessary additional costs.

22.

The superstructure design deficiencies identified in paragraphs 11 - 21 above are hereafter referred to as the "Structural Design Deficiencies." All or substantially all of the permit set of structural drawings underlying the Structural Design Deficiencies bear the professional engineer stamp of William R. O'Donnell, P.E. On information and belief, O'Donnell either prepared the foregoing design drawings and/or they were prepared under his supervision or lack thereof.

23.

In addition to removing and replacing multiple steel beams, repairs to remediate the Structural Design Deficiencies required Palmisano to, *inter alia,* install shoring to stabilize the existing structure, weld multiple steel plates to existing beams, strengthen portions of the foundation, add new steel beams, add pipe piles, increase pile caps and add new pile caps and incur additional testing and inspections costs.

24.

The Structural Steel Deficiencies forced Palmisano to revise its construction sequence, impeded Palmisano's performance, added extra costs, and substantially delayed the completion of the Hotel Project, causing WWIITI to suffer significant damages.

25.

On information and belief, from the initial request for a peer review through completion of design revisions, DeSimone failed to take timely action to identify and address the Structural Steel Deficiencies and to conduct itself with the urgency required to mitigate damage and delay to the Hotel Project and WWIITI. DeSimone did not release its first repair sketch until September 4, 2018. On September 18, 2018, DeSimone *rescinded* previously issued repair sketches and stated that the sketches need to be revised for areas in Group 1A and 1B, which areas were critical to completing the superstructure. The deficiencies on the initial third floor beam were identified on August 8, 2018, but DeSimone did not release the final repair details until October 29, 2018, almost twelve (12) weeks after the problem was identified.

26.

DeSimone failed to assign a sufficient number of qualified personnel to manage and expedite the process of identifying and resolving the Structural Design Deficiencies. DeSimone also ignored WWIITI's repeated recommendation that DeSimone assign a structural engineer to work on-site to manage field questions and mitigate schedule delay. As a result, WWIITI and Palmisano staff were required to spend an inordinate amount of project management time working on issues caused by DeSimone's Structural Design Deficiencies.

27.

Palmisano instituted methods to mitigate the delay caused by DeSimone's Structural Design Deficiencies, such as installing a temporary roof to mitigate some of the delay associated with the installation of drywall in the building interior. Palmisano also instructed its steel detailer to expedite shop drawings of repairs, expedite steel fabrication for the repairs, and to increase the number of welders to keep up with structural steel repairs. Despite the efforts to mitigate the delay, the Structural Design Deficiencies caused a minimum sixty-one (61) day delay to the completion of the Hotel Project ("the Delay").

28.

Palmisano threatened to stop work on the Hotel Project absent WWIITI's written agreement to compensate Palmisano for the cost of its extended general conditions caused by the Delay.  A work stoppage by Palmisano would have significantly delayed the Hotel Project and substantially increased costs.  Palmisano provided WWIITI with documentation establishing that Palmisano's extended general condition costs amounted to $7,100.00 per day and that such costs would be incurred for a minimum sixty-one (61) day delay to the completion of the Hotel Project for a total extended general condition costs of at least $433,100.00.  To mitigate its damages by preventing Palmisano from walking off the Hotel Project job, and after evaluating documentation that supported Palmisano's calculation of extended general condition costs, WWIITI agreed to increase Palmisano's compensation by the sum of $433,100.00.

## DAMAGES

29.

As a direct and proximate result of the acts, errors, and omissions described herein, WWIITI has suffered significant damage and is continuing to suffer and incur damages.

30.

The Delay caused by the Structural Steel Deficiencies has significantly increased the costs of the Hotel Project.  WWIITI's damages for the Delay are conservatively expected to exceed one million dollars.  In addition to WWTI's obligation to pay Palmisano an additional $433,100.00 for its extended general condition costs, WWIITI's damages for the Delay, include, but are not limited to:

    a.    Extended financing costs in the amount of $450,000.00;

    b.    Increased office lease expense in the amount of $3,125.00 per month for each month of Delay;

    c.    Increased bank inspection charges in the amount of $950.00 per month for each month of Delay;

    d.    Extended purchasing agent services of at least $7,500.00 per month for each month of Delay;

    e.    Extended hotel operator technical services charges in excess of $31,300.00 per month for each month of Delay;

    f.    Increased costs of storing furniture, fixtures, and equipment;

    g.    Increased cost of extended builder's risk insurance;

    h.    Extended construction management costs;

i.      Increased hotel staff expenses;

j.      Increased marketing costs;

k.      Lost revenue;

l.      Damage to reputation and/or loss of good will.

31.

Defendants are individually and solidarily liable to WWIITI for all damages caused by the acts, errors, and omissions described herein, including but not limited to, all costs incurred for repairs, damages due to the Delay, costs incurred to mitigate the Delay, all testing required by the repair work, Palmisano's extended general condition costs of $433,100.00, any extended general conditions costs incurred by Palmisano's subcontractors, lost revenue, damages to reputation, loss of good will, and other damages to be shown at trial plus pre-judgment and post-judgment legal interest, and all costs of these proceedings.

## COUNT 1:  DESIMONE'S AND O'DONNELL'S GROSSLY NEGLIGENT PROFESSIONAL UNDERTAKING

32.

The foregoing allegations are incorporated by reference as if fully re-stated herein.

33.

DeSimone and O'Donnell knew that their engineering design services were for the protection of WWIITI and DeSimone and O'Donnell owed professional duties of care to WWIITI to perform services in accordance with the skill usually exercised by others in the engineering profession in the New Orleans area.  DeSimone and O'Donnell breached these duties and were grossly negligent in the following non-exclusive particulars:

a.      Failing to properly calculate and/or account for building loads in the engineering design of the Hotel;

b.      Providing deficient and defective drawings for the engineering design of the Hotel;

c.      Failing to oversee and supervise personnel assigned to work on the engineering design for the Hotel Project;

d.      Failing to perform internal reviews of its engineering design to ensure compliance with basic professional standards for the Hotel Project;

e.      Failing to provide field supervision during construction of the Hotel Project;

f.      Failing to timely identify and remediate errors and/or omissions in the engineering design of the Hotel;

g.      Gross and substantial deviation from sound engineering principles and the required duties of care; and

       h.      Other acts, errors, and omissions to be shown at trial.

34.

The gross negligence of DeSimone and O'Donnell have caused and are continuing to cause damages to WWIITI.  The gross negligence of DeSimone and O'Donnell could have caused catastrophic superstructure failure and loss of life but for Palmisano's discovery of the superstructure problems.

## COUNT 2:  DIRECT ACTION LIABILITY

35.

The foregoing allegations are incorporated by reference as if fully re-stated herein.

36.

On information and belief, Evanston and/or Markel, during all relevant times, insured DeSimone and O'Donnell for the acts, errors, and omissions described above.

37.

Direct action against Evanston and/or Markel is authorized by the Louisiana Direct Action Statute, La. Rev. Stat. § 22:1269.

38.

WWIITI prays for a **trial by jury**.

**WHERERFORE**, Plaintiff, World War II Theatre, Inc., prays that its Petition be deemed good and sufficient and that, after due proceedings herein, there be judgment in Plaintiff's favor and against Defendants for all damages sustained by Plaintiff, including but not limited to costs incurred for repairs, damages due to the Delay, costs incurred to mitigate the Delay, all testing required by the repair work, Palmisano's extended general condition costs of $433,100.00, any extended general conditions costs incurred by Palmisano's subcontractors, lost revenue, damages to reputation, loss of good will, and other damages to be shown at trial, plus pre-judgment and post-judgment legal interest, all taxable costs of these proceedings, and any other remedies to which Plaintiff maybe entitled.

Respectfully submitted,

S. Gene Fendler (Bar # 05510)
Shannon S. Holtzman (Bar # 19933)
Mark R. Deethardt (Bar # 34511)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979

Attorneys for Plaintiff, World War II Theatre, Inc.

**SERVICE INSTRUCTIONS**:

**PLEASE SERVE:**

DeSimone Consulting Engineering Group, LLC
Through its Registered Agent for Service of Process:
Louisiana Corporate & Registered Agent Services, Inc.
3867 Plaza Tower Dr., 1st Floor
Baton Rouge, LA 70816

Evanston Insurance Company
Through its Statutorily Designated Agent for Service of Process:
R. Kyle Ardoin
Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809

Markel Specialty Insurance Company and/or
Markel Insurance Company
Through its Statutorily Designated Agent for Service of Process:
R. Kyle Ardoin
Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809

**PLEASE ISSUE CERTIFIED COPIES OF CITATION
AND PETITION FOR SERVICE VIA LONG-ARM STATUTE:**

William R. O'Donnell, P.E.
DeSimone Consulting Engineers
800 Brickell Ave., 6th Floor
Miami, FL 33131

4881676_1

-10-