UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WORLD WAR II THEATRE, INC.** | **CIVIL ACTION NO: 2:19-cv-11187** |
| *Plaintiffs* | |
| **VERSUS** | **SECTION: "J" (3)** |
| **DESIMONE CONSULTING ENGINEERING GROUP, LLC; WILLIAM R. O'DONNELL, P.E.; EVANSTON INSURANCE COMPANY; MARKEL SPECIALTY INSURANCE COMPANY; AND MARKEL INSURANCE COMPANY** | **DISTRICT JUDGE: CARL J. BARBIER** |
| | **MAG. JUDGE: MICHAEL B. NORTH** |
| *Defendants* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM IN SUPPORT OF DEFENDANT WILLIAM R. O'DONNELL'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendant, WILLIAM R. O'DONNELL ("O'Donnell"), files this Memorandum in Support of his Motion for Summary Judgment to demonstrate that Plaintiff, World War II Theatre, Inc. ("WWIITI") has no cause of action against O'Donnell, individually.

### I. FACTUAL AND PROCEDURAL BACKGROUND

WWIITI cannot make a claim against O'Donnell because WWIITI agreed in its contract with the Architect, Nichols Brosch Wurst Wolfe & Associates ("Architect"), who hired DeSimone Consulting Engineering Group, LLC ("DeSimone") as a consultant, to only to make claims against the limited liability companies involved in the construction project rather than any individual directors, officers, or employees. On May 25, 2017, the Architect and DeSimone executed a

{00676727.DOCX;1}

contract (the "Architect-Consultant Agreement")[1] in which DeSimone agreed to serve as a consultant structural engineer in the construction of a hotel adjacent to the WWII Museum ("Hotel Project"). The terms of the Architect-Consultant Agreement incorporate the terms of a written agreement between the owner, WWIITI, and the Architect[2] ("Owner-Architect Agreement").[3] The Architect-Consultant Agreement provides, "any claim, dispute or other matter in question arising out of or relating to this [Architect-Consultant] Agreement shall be subject to the same dispute resolution provisions as set forth in the [Owner-Architect] Agreement."[4]

One of the terms in the Owner-Architect Agreement relating to dispute resolution, §8.1.4, unequivocally bars WWIITI from taking any legal action against any individuals employed by the Architect or any of the Architect's consultants because the Architect and its consultants are all Limited Liability Companies (LLCs). Should a claim arise in the execution of the Hotel Project WWIITI *can only* seek remedies from the LLCs themselves, rather than any of the individuals.[5] This provision is thus incorporated into the Architect-Consultant Agreement between DeSimone and the Architect. WWIITI does not dispute that DeSimone is an LLC and was employed as one of the Architect's consultants for the Hotel Project. It is also undisputed that O'Donnell was

---

[1] See, *AIA Document C401-2007 Standard Form Agreement Between Architect and Consultant*, dated May 24th, 2017, attached as Exhibit A to Affidavit of William R. O'Donnell.

[2] *Architect-Consultant Agreement*, §1.1 ("[T]he Architect's agreement with the Owner, known as the Prime Agreement, … is attached… and made part of this Agreement").

[3] See, *AIA Document B101-2007 Standard Form Agreement Between Owner and Architect*, dated March 6th, 2017, attached as Exhibit B to Affidavit of William R. O'Donnell.

[4] *Architect-Consultant Agreement* supra. at 7, §8.1.

[5] *Owner-Architect Agreement*, §8.1.4: "The Owner acknowledges that the Architect and its consultants are limited liability entities and agrees that any claim made by it arising out of any act or omission of any director, officer or employee of the Architect, or its consultants, in the execution or performance of this Agreement, shall be made against the entity and not against any of their individual directors, officers or employees unless it is required to secure application of any insurance provided by the Architect under this Agreement."

{00676727.DOCX;1}　　　　　　　　　　　2

employed by DeSimone and working on behalf of DeSimone as the "Consultant's Designated Representative." [6]

On April 23, 2019, WWIITI filed a Petition for Damages in the Louisiana Civil District Court for the Parish of Orleans against DeSimone, O'Donnell, Evanston Insurance Company, Markel Specialty Insurance Company, and Markel Insurance Company (the "Defendants"). The Defendants subsequently removed the case to Federal Court on the grounds of diversity of citizenship on June 12, 2019.

As set forth in more detail below, WWIITI cannot maintain its negligence claim against O'Donnell because WWIITI contracted not to file any claims against any individuals working on behalf of the Architect's consulting LLCs.

## II. LAW AND ARGUMENT

O'Donnell should be dismissed from the present claim as a matter of law, as he is protected by WWIITI's contract, which bars WWIITI from taking action against any individuals working on behalf of LLCs. This provision in the Owner-Architect Agreement barring WWIITI from taking action against individuals is incorporated into the Architect-Consultant Agreement, to which DeSimone is a party.

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure sets forth the basic law applicable to a Motion for Summary Judgment. Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact.[7] Rule 56 provides:

---

[6] *Architect-Consultant Agreement*, supra. at 1.

[7] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.[8]

Mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.[9] A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.[10]

A party may demonstrate the absence of a genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"[11] Substantive law will

---

[8] Fed. R. Civ. P. 56.

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[10] *United States ex rel. Talamo v. Fresenius Med. Care Holdings, Inc.*, No. CV 17-3509, 2019 WL 2869075, at *6 (E.D. La. July 3, 2019), *appeal dismissed sub nom. United States of Am., ex rel, CHERI TALAMO, Plaintiff-Appellant v. FRESENIUS MEDICAL CARE HOLDINGS, INCORPORATED; SPECTRA LABORATORIES, INCORPORATED; BIO-MEDICAL APPLICATIONS OF MARYLAND, INCORPORATED; BIO-MEDICAL APPLICATIONS OF LOUISIANA, L.L.C.; RENAL CARE GROUP, INCORPORATED; BIO-MEDICAL APPLICATIONS OF LOUISIANA, INCORPORATED; FRESENIUS MEDICAL CARE LOUISIANA DIALYSIS GROUP, L.L.C.; MELISSA LAPWORTH, Registered Nurse; HEATHER CLARK, Registered Nurse; NANCY LANDRIEU, Registered Nurse, Defendants - Appellees*, No. 19-30614, 2019 WL 7811328 (5th Cir. Nov. 6, 2019)

[11] *Id.*; *SCB Diversified Mun. Portfolio v. Crews & Assocs.*, No. CIV.A. 09-7251, 2012 WL 13708, at *3 (E.D. La. Jan. 4, 2012).

identify which facts are material.[12] Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.[13]

A party seeking summary judgment bears the burden of showing absence of genuine issue of material fact.[14] The court must consider the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the nonmoving party.[15] A court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[16] A court may not resolve credibility issues or weigh evidence on a summary judgment motion.[17]

Rule 56 mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial.[18] "'[U]nsubstantiated assertions,' 'conclusory allegations,' and merely colorable factual bases are insufficient to defeat a motion for summary judgment."[19] The moving party will be "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a

---

[12] *Anderson*, 477 U.S. at 248.

[13] *United States ex rel. Talamo*, 2019 WL 2869075, at *6, citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[15] *United States ex rel. Talamo*, 2019 WL 2869075, at *6, citing *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).

[16] *Id.*, citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[17] *Id.*, citing *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[18] *Celotex Corp.*, 477 U.S. at 322.

[19] *United States ex rel. Talamo*, 2019 WL 2869075, at *6, citing *Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).

sufficient showing on an essential element of the nonmoving party's case with respect to which that party has the burden of proof.[20]

### B. O'Donnell is not personally liable for actions performed on behalf Limited Liability Company, DeSimone Consulting Engineering Group.

WWIITI's claim does not offer any argument as to why O'Donnell should be personally liable for any of the alleged damages. At all times, O'Donnell was acting in furtherance of the contract between DeSimone and the Architect. WWIITI's Petition alleges:

> [O'Donnell] is a partner of DeSimone and serves as the managing principal of DeSimone's Miami Office. The Contract between [the Architect] and DeSimone identifies O'Donnell as DeSimone's "designated representative" for purposes of the Hotel Project. On information and belief, O'Donnell either prepared the structural design drawings for the Hotel Project and/or they were prepared under his supervision.[21]

Here, WWIITI acknowledges that any work or oversight O'Donnell contributed to the structural design drawings for the Hotel Project was in furtherance of what DeSimone agreed to do for the Architect in the Architect-Consultant Agreement, and O'Donnell did the work as a representative of DeSimone.

Since the inception of this litigation, O'Donnell has maintained that he was inappropriately added as a Defendant. O'Donnell has referred Plaintiff to the Owner-Architect Agreement, which bars claims against individual directors, officers, or employees of the Architect and its consultants. This provision Section § 8.1.4 of Owner-Architect Agreement provides:

> The Owner [(WWIITI)] acknowledges that the Architect and its consultants [(DeSimone)] are limited liability entities and agrees that any claim made by it arising out of any act or omission of any director, officer or employee of the Architect, or its consultants, in the execution or performance of this Agreement, shall be made against the entity and not against any of their individual directors,

---

[20] *Celotex Corp.*, 477 U.S. at 323.

[21] See, *Plaintiff's Petition for Damages*, ¶ 9 [Doc. 1-2].

officers or employees unless it is required to secure application of any insurance provided by the Architect under this Agreement.[22]

WWIITI claims the provision is inapplicable because neither O'Donnell nor DeSimone was a party to the Owner-Architect Agreement. However, WWIITI's position is misguided because the Architect-Consultant Agreement identifies O'Donnell as DeSimone's representative, and not as a separate party to the contract.[23] The Architect-Consultant Agreement incorporates the terms of the Owner-Architect Agreement.[24] Section § 1.1 of the Architect-Consultant Agreement provides:

> A copy of the Architect's agreement with the Owner, known as the Prime Agreement…is made a part of this Agreement. All provisions, responsibilities, obligations and scope of services incurred either specifically or by reasonable inference by the Architect in the Prime Agreement shall be made a part of the Consultant's services as part of this Agreement. In case of discrepancies between this Agreement and the Prime Agreement, the Prime Agreement shall take precedence.

Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court.[25] Interpretation of a contract is the determination of the common intent of the parties.[26] When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.[27] The rules of construction do not authorize a perversion of words or the exercise of inventive powers to create ambiguity were none

---

[22] *Owner-Architect Agreement*, Section § 8.1.4

[23] *Architect-Consultant Agreement*, at 1.

[24] *Architect-Consultant Agreement*, §1.1

[25] *Amoco Prod. Co. v. Texas Meridian Res. Expl. Inc.*, 180 F.3d 664, 668 (5th Cir. 1999)[Louisiana].

[26] La. Civ. Code art. 2045.

[27] La. Civ. Code art. 2046; *Amoco Prod. Co.*, 180 F. 3d at 668.

exists.[28] "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight."[29]

Considering Louisiana law on contract interpretation and looking at the plain meaning of the words in Section § 8.1.4 of the Owner-Architect Agreement, WWIITI has thus specifically agreed NOT to take legal action against individual members of the Architect or its Consultants for acts in execution or performance of the Owner-Architect Agreement. Then considering the plain language of the Architect-Consultant Agreement, Section § 8.1.4 is incorporated into the Architect-Consultant agreement and thus applies to DeSimone and O'Donnell. Therefore, WWIITI can take no action against O'Donnell as an individual for acts pursuant to the Architect-Consultant Agreement.

Further, WWIITI claims that O'Donnell should not be dismissed because La. Civ. Code art. 2004 nullifies Section § 8.1.4. La. Civ. Code art. 2004 provides: "Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party."

In its Petition for Damages, WWIITI alleges that DeSimone and O'Donnell owed it a professional duty of care and that they both committed gross negligence in their performance of those duties.[30] Under Louisiana law, gross negligence is "willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence."[31] Gross negligence is substantially and

---

[28] *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03); 848 So. 2d 577, 580.

[29] *Amoco Prod. Co.*, 180 F. 3d at 668-69, quoting *Texas Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir.1998)(citing *Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir.1996).

[30] *Plaintiff's Petition for Damages*, ¶ 33.

[31] *Houston Expl. Co. v. Halliburton Energy Servs., Inc.*, 269 F.3d 528, 531 (5th Cir. 2001)[Louisiana].

appreciably higher in magnitude than ordinary negligence.[32] Louisiana courts have defined gross negligence as "the entire absence of care;" the "want of even slight care and diligence;" the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others;" and when one "has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."[33] However, the Plaintiff does not cite any gross negligence specific to O'Donnell which would nullify Section § 8.1.4 of the Owner-Architect Agreement pursuant to La. Civ. Code art. 2004.

### III. CONCLUSION

O'Donnell's Motion for Summary Judgment should be granted because WWIITI has no cause of action against O'Donnell individually based the terms of the Owner-Architect Agreement and Architect-Consultant Agreement. WWIITI contracted in the Owner-Architect Agreement that it would not hold any individual directors, officers, or employees of the Architect or its consultants liable, should any claims arise from their work on the Hotel Project. The Architect-Consultant Agreement unambiguously incorporates these terms. Because O'Donnell is the Managing Principal of DeSimone's Miami office, and because DeSimone is a consultant to the Architect, WWIITI has no right to make any claims against O'Donnell as an individual.

---

[32] *Id.*, at 532, referencing *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 224 (5th Cir. 1991).

[33] *Houston Expl. Co.*, 269 F.3d at 532; *Orthopedic & Sports Injury Clinic*, 992 F.2d at 224; *Hendry Corp. v. Aircraft Rescue Vessels,* 113 F.Supp. 198, 201 (E.D.La.1953); *State v. Vinzant,* 200 La. 301, 315, 7 So.2d 917, 922 (1942).

Respectfully Submitted:

**DEGAN, BLANCHARD & NASH**

/s/Charles B. Long
Sidney W. Degan, III (#4804)
John M. Futrell (#5865)
Charles B. Long (#22824)
400 Poydras Street, Suite 2600
New Orleans, Louisiana 70130
Telephone: 504-529-3333
Facsimile: 504-529-3337
*Counsel for Defendants, DeSimone Consulting Engineering Group, LLC and William O'Donnell*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served upon all known parties of record via facsimile and United States mail, properly addressed and postage pre-paid on this 18th day of February, 2020.

/s/Charles B. Long
CHARLES B. LONG