UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WORLD WAR II THEATRE, INC.** | * | |
| Plaintiff, | * | **CIVIL ACTION NO. 19-11187** |
| | * | |
| versus | * | |
| | * | **JUDGE:  CARL J. BARBIER** |
| **DESIMONE CONSULTING** | * | |
| **ENGINEERING GROUP, LLC;** | * | |
| **WILLIAM R. O'DONNELL, P.E.;** | * | **MAGISTRATE JUDGE:** |
| **EVANSTON INSURANCE** | * | **MICHAEL B. NORTH** |
| **COMPANY; MARKEL SPECIALTY** | * | |
| **INSURANCE COMPANY; AND** | * | |
| **MARKEL INSURANCE COMPANY** | * | |
| Defendants | * | |

**MEMORANDUM IN OPPOSITION TO MOTION FOR
PROTECTIVE ORDER FILED BY EVANSTON INSURANCE COMPANY**

World War II Theatre, Inc. ("WWIITI") respectfully opposes the Motion for Protective Order filed by defendant Evanston Insurance Company (Doc. 19).  Evanston contends that it is entitled to a protective order precluding discovery of certain documents and information that it deems irrelevant or privileged.  Evanston, however, has not satisfied its burden of proving irrelevance, privilege, or any good cause for a protective order.  As set forth below, the requests at issue seek discovery directly related to Evanston's coverage defenses and other relevant issues.  Further, Evanston has not satisfied its burden of proving that all documents listed on its privilege log should be protected from discovery on privilege grounds.

**BACKGROUND**

WWIITI is a Louisiana non-profit corporation that operates as a tax exempt supporting organization to The National World War II Museum, Inc.  In December 2019, WWIITI opened the Higgins Hotel & Conference Center (the "Hotel") on property adjacent to the Museum.

Construction of the Hotel began in 2017 and substantial completion was achieved on October 11, 2019.  Declaration of Robert Farnsworth (Exhibit A) at ¶¶ 3-5.

This lawsuit seeks damages due to egregious structural engineering errors by DeSimone Consulting Engineering Group, LLC and the engineer of record, William O'Donnell, which delayed the Hotel's completion, significantly increased construction costs, and caused WWIITI to suffer delay damages, lost profits, and other losses.  In October 2018, Mr. O'Donnell acknowledged the severity of the engineering errors and stated that DeSimone and its insurer were committed to reimburse all costs related to the remediation and delay.  Farnsworth Dec. ¶ 8. After vetting certain initial repair costs and supporting documentation, DeSimone paid $88,000.00 to WWIITI on November 19, 2018 and Evanston paid $344,273.54 to WWIITI on December 19, 2018.  *Id.* at ¶ 9.  Although supporting documentation for all repair costs was fully vetted and approved by the Architect and despite assurances that subsequent payments would be made, no further payments were made to reimburse WWIITI for costs caused by the structural engineering errors.  *Id.* at ¶ 10.

WWIITI filed this suit in April 2019 and Evanston filed its Answer on July 1, 2019. Evanston's Answer asserts 47 separate affirmative defenses, most of which contend that insurance coverage "is or may be" excluded under various terms of the policy.  *See* Doc. 13, Affirmative Defense Nos. 6, 7, 10-28, 30, 37.  For example, Evanston's Thirteenth, Twenty-Third, and Twenty-Sixth Affirmative Defenses contend that coverage is excluded based on the underwriter's right to investigate the insurance application and because DeSimone may have made material, false statements in the application.  Doc. 13, pp. 12, 16, 17.  In its Twenty-Fourth and Thirty-Seventh Defenses, Evanston claims that other insurance policies may preclude coverage under its policy.  Doc. 13, pp. 16, 19.  Evanston's other affirmative defenses broadly

dispute whether WWIITI's claims are covered by the insurance policy, whether Evanston received adequate notice of the claim, whether Evanston received satisfactory proof of loss, and whether DeSimone complied with all terms and conditions of the policy.  Doc. 13, pp. 9-17.

WWIITI propounded discovery on Evanston seeking, *inter alia*, documents related to the Hotel Project and to Evanston's defenses.  *See* Doc. 19-3.  On February 7, 2020, the Friday before Evanston's responses were due, its counsel emailed undersigned counsel requesting a discovery conference and stating Evanston's intent to file a motion for protective order to protect its underwriting and claims files.  Doc. 19-7.  WWIITI's counsel (who had been out of state February 4-9, 2020), responded, stating: "WWIITI does not agree that Evanston's underwriting and claim files are exempt from discovery, but if you can point us to any law that supports your position, we would be happy to consider it."  *Id.*  Rather than engaging in any attempt to explain or support the basis for its position, Evanston filed its motion for protective order with respect to WWIITI's Request for Production Nos. 2, 3, 4, 8, 13, 15, and 19 and Interrogatory No. 5 on grounds that such requests are irrelevant or protected by the attorney-client or work-product privileges.  Doc. 19-1.

On the same day that it filed its motion, Evanston provided written responses to WWIITI's requests and produced numerous documents from its claims and underwriting files.  *See* Exhibit B attached hereto; Doc. 19-4, pp. 8-9, 17-18.  Bates numbers for the documents that Evanston withheld from its production based on relevance and privilege arguments are listed on the privilege log attached to its motion.  Doc. 19-4.  Despite its assertion of defenses that put the contents of DeSimone's insurance application, claims information, and prior insurance policy squarely at issue, Evanston has refused to produce such documents.  Although not specifically identified in its motion for protective order, Evanston has also withheld information or provided

limited responses to Interrogatory Nos. 4, 6, and 8 and Request for Production Nos. 9, 12, and 24-26 based on the same grounds asserted in the instant motion before the Court.  *See* Exhibit B.

**ARGUMENT**

A party requesting a protective order bears the burden of proving good cause that the requested relief is "needed to prevent a specific, credible, potential injury." *America First Ins. Co. v. BIC Corp.*, 2012 WL 1950032, at *1 (W.D. La. May 30, 2012); *see also Blanchard & Co. v. Barrick Gold Corp.*, 2004 WL 737485, at *5 (E.D. La. April 5, 2004) ("'Good cause' exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order."). To satisfy this burden, the movant must make a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re: Terra Int'l, Inc.,* 134 F.3d 302, 306 (5th Cir. 1998) (internal quotations omitted).  "Broad allegations of harm, unsubstantiated by specific examples, do not support a showing of good cause." *Blanchard & Co.*, 2004 WL 737485, at *5 (internal quotations omitted).  Evanston has not satisfied its burden of proving that a protective order is necessary to prevent a clearly defined serious injury.

  A.  **Evanston Misconstrues the Law.**

Evanston's motion is based on the incorrect assumption that "there is no precedent" for the discovery of underwriting and claims documents by a party whose claim arises under the Direct Action Statute and/or if bad faith has not been asserted. Doc. 19-1, p. 2. Not so. Courts often require the production of insurance files in cases filed by the insured's victim and regardless whether bad faith has been asserted. *E.g., LeBlanc v. Texas Brine Co., LLC*, No. 12-2059, 2019 WL 5265063, at *1-2 (E.D. La. Oct. 17, 2019) (ordering production of insurer's claims adjustment reports requested by third party); *Clean Earth of Maryland, Inc. v. Total Safety, Inc.*, No. 10-119, 2011 WL 4832381, at *8 (N.D. W. Va. Oct. 12, 2011) (rejecting

insurer's argument that its documents were irrelevant absent bad faith claim and permitting discovery of insurer's underwriting file by third party who was injured by insured).

The Direct Action Statute in no way limits WWIITI's discovery rights. Rather, the Direct Action Statute permits WWIITI to stand in the shoes of DeSimone for purposes of enforcing the policy because one of the express intents of the Direct Action Statute is that "all liability policies within their terms and limits are executed for the benefit of all injured persons … to whom the insured is liable." La. Rev. Stat. § 22:1269(D): *see also New Amsterdam Cas. Co. v. Harrington,* 274 F.2d 323, 326 (5th Cir. 1960) (noting that an insurer sued under the Direct Action Statute "is a party litigant in every sense of the word.")[1]

Evanston cites no authority that supports its view that underwriting and claims file documents are exempt from discovery in every case against an insurance company. For example, *Bilyeu v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 184 So. 3d 69, 79 (La. App. 2d Cir. 2015), was a summary judgment decision in which appellants argued that the Court should have drawn an adverse presumption based on writings that were missing from the insurer's production of underwriting materials. The *Bilyeu* Court noted that such materials were inadmissible in light of its determination that the insurance policy was not ambiguous, but it offered no opinion on discoverability. As stated in a case cited by Evanston (p. 12, n. 28,): "Discoverability and admissibility are two different issues." *Johnson v. Mike Anderson's Seafood, Inc.,* 144 So. 3d 125, 130 (La. App. 4th Cir. 2014); *see also Clean Earth of Maryland, Inc. v. Total Safety, Inc.*, No. 10-119, 2011 WL 4832381, at *8 (N.D. W. Va. Oct. 12, 2011)

---

[1] That Evanston has already produced certain documents relevant to WWIITI's claims is a tacit recognition that its documents are not subject to any blanket exclusion from discovery. *See McHugh v. Chastant,* 503 So. 2d 791, 794 (La. App. 3d Cir. 1987) (noting that insurer's request for time to segregate discoverable documents was a tacit recognition that they were discoverable and ordering insurer to produce its file documents).

("Where a Court 'cannot decide on the current record that the Policy is wholly unambiguous, it will not refuse discovery that may tend to lead to admissible evidence regarding the meaning of the policy.'") (quoting *Cummins, Inc. v. Ace Am. Ins. Co.,* No. 09-738, 2011 WL 130158, at *6 (S.D. Ill. Jan. 14, 2011)).

Evanston's reliance on another summary judgment decision, *McCullough v. Fid. & Deposit. Co.*, 2 F.3d 110, 113 (5th Cir. 1993), is similarly misplaced. *McCullough* was a summary judgment case in which the Fifth Circuit rejected FDIC's argument that it should have been permitted time to conduct additional discovery pursuant to Rule 56(f). The Court determined that additional discovery was not necessary because all communications between the insurer and the insureds *had already been produced* and the communications confirmed that the insured failed to provide notice of the claim as required to trigger coverage. *Id*. In striking contrast to *Bilyeu* and *McCullough*, discovery has just begun in this case, underwriting documents and communications between the insurer and the insured have *not* been produced, and Evanston has filed a motion for protective order, not a summary judgment motion

### B. The Documents and Information Requested Are Relevant and Discoverable.

For discovery purposes, relevant information "encompasses 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Gaudet v. GE Indus. Servs.*, No. 15-795, 2016 WL 2594812, at *3 (E.D. La. May 5, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). A discovery request "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter in the action or if there is any possibility that the information sought may lead to the discovery of admissible evidence." *S. U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669, 2012 WL 262560, at *2 (E.D. La. Jan. 30, 2012); *see also Heaton v. Monogram Credit Card Bank of Georgia*, No. 98-1823, 2004 WL 515760, at *4 (E.D. La. March

16, 2004) (explaining that discovery should be permitted "unless it is clear that the information sought can have no possible bearing on the subject matter of the action").[2]

A party seeking to protect information on relevance grounds must show specifically how each request is not relevant. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990). Evanston has not come close to showing how each of the requests at issue is irrelevant. Instead, Evanston asserts two extremely general conclusions: 1) it contends that Request for Production Nos. 2, 3, and 19 and Interrogatory No. 5 seek irrelevant information because "[t]his is not a bad faith action by an insured against an insurer;" and 2) it contends that Request for Production Nos. 4, 8, 13, and 15 "seek information that is irrelevant to Plaintiff's direct action claim Evanston." Doc. 19-1, pp. 6, 8.

### 1. Underwriting and Claims File Documents are Relevant (RFP Nos. 2, 4, 13 and 15).

Request for Production Nos. 2, 4, 13 and 15 seek the underwriting file, internal communications regarding the Hotel Project, documents related to claims on the Project, and documents and correspondence from any adjuster related to any claim on the Project. Given that Evanston's defenses expressly rely on, *inter alia,* information provided in DeSimone's insurance application, the failure to provide timely notice of the claim, the failure to provide satisfactory proof of loss, the failure to satisfy conditions precedent, and/or the failure to cooperate with the underwriter in the investigation of the claim,[3] the underwriting and claims file documents sought by WWIITI are plainly relevant and discoverable. *E.g.*, *Banks v. Meier,* No. 17-12, 2017 WL 4891530, at *3 (M.D. La. Oct. 30, 2017) (ordering production of non-privileged claims file

---

[2] The liberal treatment given to the discovery rules is well-recognized "in order to affect their purpose of adequately informing litigants in civil trials." *S. U.S. Trade*, No. 10-1669, 2012 WL 262560, at *2 (citing *Hebert v. Lando,* 441 U.S. 153, 176 (1979)).

[3] *See* Doc. 13, Affirmative Defense Nos. 6, 7, 10-28, 30, 37.

documents); *Heartland World Ministries v. Cent. Mut. Ins. Co.*, No. 13-02337, 2014 WL 12531160, at *1-2 (N.D. Tex. Feb. 20, 2014) (ordering insurer to produce its underwriting file and administrative materials within its claims file and directing insurer to submit claimed privileged communications for *in camera* review); *Trammell Crow Residential Co. v. St. Paul Fire & Marine Ins. Co.*, No. 11-2853, 2013 WL 12124331, at *1-2 (N.D. Tex. Aug. 21, 2013) (claims file and underwriting information held relevant to insurer's coverage defenses); *Olin Corp. v. Continental Cas. Co.*, No. 10-623, 2011 WL 3847140, at *3 (D. Nev. Aug. 30, 2011) (insurer's claim file held relevant to coverage defenses even if such defenses were asserted "to the extent" that they may apply and denying insurers request for a protective order). As one Court has explained, when "a defense has been asserted that the claim falls outside the policy's coverage, the defendant's argument [that underwriting files are irrelevant] must fail because the information is relevant to whether the incident is covered." *Clean Earth*, 2011 WL 4832381, at *8 (also noting that "[m]any courts have already addressed the issue of the discoverability of underwriting files, and the general consensus is that they are discoverable").

### 2.     Information Related to Insurance Coverage is Relevant (RFP No. 3).

Request No. 3 seeks basic documents related to any insurance policy issued by Evanston that may provide coverage for WWIITI's claims such as declaration pages, endorsements and renewals. Such documents are clearly relevant to the claims and defenses in this action. *E.g., Olin,* 2011 WL 3847140, at *4 ("The type and extent of coverage requested and paid for is directly relevant to whether Olin has a right to recover from Property Insurers for the alleged loss.").[4] Evanston's request for a protective order shielding such documents should be denied

---

[4]     Evanston has withheld various documents regarding the policy, its endorsements, and changes to the policy that are relevant to whether the policy provides coverage for WWIITI's claims. *E.g.,* Doc. 19-4, pp. 9, 10 (000633-000640, 000641-000655, 000715-000729, 000730-000767).

given its failure to even offer any specific argument as to why such documents are not relevant. *See McLeod,* 894 F.2d at 1484-1485.

### 3. Information Regarding the Calculation of Amounts Owed Under the Evanston Policy is Relevant (Interrogatory No. 5).

Interrogatory No. 5 seeks information regarding Evanston's methodology for calculating amounts owed on claims related to the Hotel Project. Doc. 19-3, p. 4.[5] This information is relevant to Evanston's Twenty-Eight Affirmative Defense that WWIITI's claims are barred under the doctrines of release, accord and satisfaction, or prior discharge. *See* Doc. 13, p. 17. In other words, WWIITI is entitled to discovery regarding amounts already paid so that it can verify what amounts have been discharged or satisfied.

### 4. Loss Reserves are Relevant to Show When Evanston Received Notice of DeSimone's Claim (RFP No. 19).

Request No. 19 seeks loss reserve information, which is relevant to Evanston's Twenty-Second Affirmative Defense that coverage is excluded because DeSimone did not provide timely and adequate notice of a claim. Doc. 13, p. 15. Based on this coverage defense, information related to the date that Evanston received notice and began establishing loss reserves for the claim is discoverable. *E.g Pinnacle Med. Servs., Inc. v. Hanover Ins. Co.*, No. 06-08227, 2008 WL 11353743, at *3 (E.D. La. Feb. 28, 2008) (noting that "loss reserves may show when an insurer had notice of an insured's claim"); *Am. Med. Sys., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Inc.*, No. 98-1788, 1999 WL 781495, at *3 (E.D. La. Sept. 29, 1999) (holding loss reserve information relevant and discoverable where insurer claimed it did not receive notice of claim). WWIITI, however, would be willing to drop Request No. 19 if Evanston agrees to

---

[5] Evanston admits that it has voluntarily made some payments related to WWIITI's claims. *See* Doc. 19-1, p. 2.

produce the notice of claim information received from DeSimone, which it has thus far refused to produce. *See* Doc. 19-4, pp. 9-10 (000672-000675, 000790-000877).

### B. Evanston's Privilege Arguments Do Not Support Its Motion.

As reflected in the prefatory instructions to the discovery requests, WWIITI is *not* seeking privileged documents. *See* Doc. 19-3, p. 3, ¶ 15. Evanston, however, has not satisfied its burden of proving that all documents listed on its privilege log should be protected from discovery on privilege grounds.

#### 1. Evanston Misconstrues the Case Law.

Similar to its relevance argument, Evanston's privilege argument misinterprets the case law to suggest that an insurer's claim files are deemed privileged or not discoverable as a matter of law. Doc.19-1, p. 12, n.28 (citing *Broussard v. State Farm Mt. Auto. Ins. Co.,* 519 So. 2d 136 (La. 1988), and *Vincent v. DS Servs. of Am., Inc.,* 237 So. 3d 53 (La. App. 3d Cir. 2018)). Evanston misconstrues and overstates the law. In *Lewis v. Warner,* 639 So. 2d 1182 (La. 1994), the Louisiana Supreme Court clarified the rule set in *Broussard,* stating that a plaintiff "is not entitled to blanket production of the insurer's file" as per *Broussard;* nonetheless, "the file may contain material that is discoverable." The *Lewis* Court therefore remanded the case to the trial court for *in camera* inspection to determine which documents maintained by the insurer were discoverable. *Id.* at 1182-1183; *see also Banks v. Meier,* No. 17-12, 2017 WL 4891530, at *2-3 (M.D. La. Oct. 30, 2017) (rejecting insurer's argument that *Broussard* precludes discovery of all claims file documents and ordering production of all responsive, non-privileged items).

Evanston also wholly misconstrues *Vincent v. DS Servs. of Am., Inc.,* 237 So. 3d 53, 57 (La. App. 3d Cir. 2018), by suggesting that the Court's refusal to compel production was solely because the insured was "not pursuing a claim against her own insurer." Doc. 19-1, p. 12. The facts and issues before the *Vincent* Court are completely distinct from the facts and issues here

and the *Vincent* Court did not establish the broad rule urged by Evanston.  The insured plaintiff in *Vincent* sued the tortfeasor and the employer of the tortfeasor who had caused the plaintiff's injuries.  The plaintiff's insurer, State Farm, was *not* a party to the lawsuit and there was no issue as to whether it had provided coverage for plaintiff's injuries.  The issue in *Vincent* was whether the third party employer was entitled to State Farm's entire claims file for the insured including the plaintiff's claims history with respect to *other unrelated incidents*.  The *Vincent* trial court conducted an *in camera* inspection to determine whether the claims file documents were privileged and granted in part the motion to quash the subpoena issued by the third party employer.  237 So. 3d at 56.

Significantly, the *Vincent* Court expressly rejected the notion that all documents in an insurer's claims file are entitled to protection under the work product doctrine.  *Id.* at 57 (quoting *McHugh,* 503 So. 3d at 793, for the premise that "an insurer's file is not created in anticipation of litigation simply because it is only compiled after an accident has occurred and, therefore, at a time when litigation must be considered a possibility" and that the factual data underlying an insurance claim, including internal reports and communications generated during the claims process, may be discoverable).  *Vincent* simply does *not* support the broad rule that an insurer's documents are never discoverable absent a claim by the insured against the insurer.  No such rule exists.  *E.g.*, *LeBlanc v. Texas Brine Co., LLC*, No. 12-2059, 2019 WL 5265063, at *1-2 (E.D. La. Oct. 17, 2019) (ordering production of insurer's claims adjustment reports requested by third party).

        **2.**     **Evanston Has Not Satisfied Its Burden of Proving That All Withheld Documents Are Privileged.**

Evanston has not carried its burden of establishing that every document it has withheld is subject to the attorney client privilege or work-product doctrine.  The party seeking a protective

order on privilege grounds bears the burden of proving, with *evidence*, that each document at issue is privileged or prepared in anticipation of litigation "as opposed to some other non-protected purpose, such as claims adjusting or investigation, ordinary course of business." *Verret v. State Farm Fire & Cas. Co.*, No. 13-5596, 2014 WL 460933, at *4-5 (E.D. La. Feb. 5, 2014). Evanston argues that "the timeline establishes" that its communications are "squarely within the anticipation of litigation privilege." Doc. 19-1, p. 12. Yet, the timing of a communication is not dispositive of this issue. *E.g.*, *Verret*, 2014 WL 460933, at *2 (noting that "documents prepared after litigation is commenced are *not* protected by the work product doctrine if the primary motivation behind their preparation was to serve ordinary business purposes, as opposed to aiding in litigation").

Evanston contends that it was notified of the claim on August 23, 2018 and that it retained counsel in less than six weeks, but it has produced no evidence to substantiate its assertion. Doc. 19-1, p. 12, n.30. The documents cited by Evanston, 000793-000797 and 001349-001355, are identified in its list of *withheld* documents. *See* Doc. 19-4, pp. 13, 16 (inaccurately referred to as pages 18 and 19 in Evanston's brief). Moreover, the mere retention of counsel does not *ipso facto* cloak all documents as privileged. *E.g.*, *Motion Indus., Inc. v. Superior Derrick Servs., LLC*, No. 15-1958, 2016 WL 760776, at *4 (E.D. La. Feb. 26, 2016) ("It has been widely cautioned that the work-product doctrine 'is not an umbrella that shades all materials prepared by a lawyer, or agent of the client.'") (quoting *U.S. v. El Paso Co.,* 682 F.2d 530, 538 (5th Cir. 1982)). As explained by one authority:

> Insurance companies are in the business of handling claims by their insureds, which includes analyzing whether the claims are covered under their policies. The mere fact that an attorney is involved in the handling of claims, which necessarily includes analysis of coverage, does not preclude production of all claim investigation documents.

J. Mathias, J. Shugrue, T. Marrinson, *Insurance Coverage Disputes,* § 5.01[1][a] (2019); *see also Paulsen v. State Farm Ins. Co.,* No. 06-9546, 2008 WL11353752, at *1-3 (E.D. La. April 14, 2008) (denying motion to quash trial subpoena served on insurer's Special Handling Unit representative; rejecting insurer's contention that representative's only role was to provide assistance at the direction of counsel given insured's failure to submit sufficient evidence to satisfy its burden of proving that the testimony would be privileged).

The decision in *LeBlanc v. Texas Brine Co., LLC*, No. 12-2059, 2019 WL 5265063, at *1-2 (E.D. La. Oct. 7, 2019), is illustrative. In *LeBlanc,* a third party defendant, Vulcan, sought production of cost review reports from the insurer of the third party plaintiff, Texas Brine. The insurer's consultants had prepared the cost review reports to assess the reasonableness of Texas Brine's submissions for reimbursement of expenses related to an environmental remediation project. *Id*. Texas Brine sought a protective order on grounds that the reports were protected by the attorney-client and work-product privileges. *Id.* at *2. The Court, however, denied the motion after reviewing the documents *in camera.* Rejecting the attorney-client privilege assertion, the Court found that the reports were essentially adjustments of Texas Brine's claim by third-party adjusters and that nothing in the reports "could be construed as a communication made for the purpose of giving or obtaining an opinion on the law or legal services." *Id.* at *4 (internal quotations omitted).

The *LeBlanc* Court also rejected Texas Brine's work-product argument based on its failure to establish that "the primary motivating purpose behind creation of the reports was to aid in future litigation, as required by well-established Fifth Circuit precedent." *Id.* at *6; *see also McHugh,* 503 So. 3d at 793 (noting that "an insurer's file is not created in anticipation of litigation simply because it is only compiled after an accident has occurred and, therefore, at a

time when litigation must be considered a possibility"); *Vincent,* 237 So. 3d at 57 (quoting same).

Finally, it also bears noting that Evanston's privilege log is woefully inadequate. Federal Rule of Civil Procedure 26 requires a description of the nature of each privileged document "in a manner that … will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); s*ee also Marine Power Holding, LLC v. Malibu Boats, LLC*, No. 14-912, 2016 WL 9412853, at *3 (E.D. La. June 23, 2016) ("The purpose of the privilege log is to provide the parties and the court adequate information to determine whether a document is privileged.") (quoting *In re Papst Licensing, GmhH Patent Litig.*, 2001 WL 1135268, at *2 (E.D. La. Sept. 19, 2001)). To that end, "a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document." *Id*.; *see also Cashman Equip. Corp. v. Rozel Operating Co.*, No. 08-363, 2009 WL 2487984, at *2 (M.D. La. Aug. 11, 2009) (explaining that a privilege log "should also describe the document's subject matter, the purpose for its production, and a specific explanation of why the document is privileged or immune from discovery") (internal quotations omitted).

Contrary to the foregoing requirements, Evanston's privilege log, Doc. 19-4, makes boilerplate assertions of privilege (*e.g.*, "post-litigation communication," "attorney-client communication," and "work product privilege/doctrine") as to unspecified "correspondence" and "emails" without providing sufficient detail to assess the validity of the privileges asserted. Additionally, the privilege log does not identify the names of the authors or recipients of each document, what company they work for, their job titles, or provide other information necessary to determine whether a privilege attaches to each communication. Evanston's vague references to the authors and recipients as "insurer," "insured," and "attorneys" are insufficient. *E.g.*,

*Verret*, 2014 WL 460933, at *3 (privilege log that provided only vague descriptions of withheld documents and referred only to defendant "State Farm" as author without naming other authors or recipients of documents held deficient); *Taylor Energy Co., L.L.C. v. Underwriters at Lloyd's London*, No. 09-6383, 2010 WL 3952208, at *2 (E.D. La. Oct. 7, 2010) ("Document descriptions such as 'Email forwarding attorney client communication,' 'Email regarding attorney input and advice regarding anticipated litigation issues,' and 'Email forwarding attorney report' fail to set forth adequate facts for this Court—and for plaintiff—to determine whether the claimed privilege protects the document from disclosure."); *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, No. 09-3866, 2010 WL 11538482, at *2 (E.D. La. Mar. 12, 2010) (holding privilege log "inadequate" where log did not describe nature of documents in sufficient detail or identify authors or recipients of withheld communications).

**CONCLUSION**

No case cited by Evanston holds that an insurer's files should be protected from discovery irrespective of the insurer's coverage defenses. To determine whether WWIITI's losses are covered by the Evanston Policy — or barred under the myriad exclusions cited by Evanston — non-privileged information in Evanston's underwriting file, claims file, and its "Direct Action File" is discoverable. For all the reasons stated in this opposition, WWIITI respectfully submits that Evanston's motion for protective order should be denied. At a minimum, a protective order should *not* be granted absent *in camera* review or Evanston's production of a supplemental privilege log that permits an assessment of each asserted privilege.

Respectfully submitted,

/s/ Shannon S. Holtzman
S. Gene Fendler (Bar # 05510)
Shannon S. Holtzman (Bar # 19933)
Mark R. Deethardt (Bar # 34511)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone: (504) 581-7979

Attorneys for Plaintiff, World War II Theatre, Inc.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been filed electronically with the Clerk of Court using the CM/ECF system and that notice of this filing has been sent to all parties or counsel of record who are registered to receive electronic service by operation of the Court's electronic filing system, this 24th day of February, 2020.

/s/ Shannon S. Holtzman

5050072_1.docx